UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov


In re:

GENIE INVESTMENTS NV INC.,

Debtor.

_____/

Case No.: 3:24-bk-00496-BAJ

Chapter 7

CHARLES BLAKE STRINGER and
NUTRA-ACRES, LLC

      Plaintiffs

vs.

GENIE INVESTMENTS NV INC.

      Defendant

_____/

Adv. Pro. No.: 3:26-AP-_____BAJ

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs/Creditors, CHARLES BLAKE STRINGER and NUTRA-ACRES, LLC ("Plaintiffs"), by and through their undersigned counsel, file this, their Complaint for Declaratory Relief against Defendant/Debtor, GENIE INVESTMENTS NV INC. ("Debtor" or "Defendant") with the Judgment to declare that the Defendant Debtor is adjudicated to constitute a Ponzi Scheme, for all purposes, and as grounds therefore state as follows:

### I.  Summary Of Argument

1.      GENIE INVESTMENTS NV, INC. ("Debtor" or "Defendant") is a classic Ponzi Scheme, which operated prepetition as an entity conducting a variety of fraudulent operations against individuals, small business owners, and large business owners (the "Customers"). The

Debtor entered into contractual loan agreements with its borrower-customers. These loan products were labeled as "BELOC" (Business Equity Line of Credit). The loans were heavily promoted and advertised with competitive interest rates and terms, which made them attractive to business owners. The Debtor's conduct satisfies all elements of applicable Ponzi-scheme tests, and multiple elements are independently satisfied by distinct categories of conduct reflected in the Debtor's own records and the Court-appointed Examiner's findings.

2.      This matter involves a hybrid structure in which some participants may have been initially characterized as investors; however, those individuals received no return or benefit, and in certain instances only received return of principal after extended periods, with such payments derived from other participant funds. The predominant structure at issue is not investment-based, but rather a borrower/lender model involving executed loan agreements, required borrower performance, and obligations tied to the Debtor's purported lending program.

3.      As discussed herein, Kirkland v. Rund, No. 22-55944 (9th Cir. Aug. 23, 2024), is governing here because it tackles the "investment" versus lender dichotomy. The Ninth Circuit expressly recognized that "lenders can be victims of a Ponzi scheme as a matter of law," and emphasized that the inquiry turns on the economic substance of the transactions, not the labels assigned to participants.

4.      The Debtor held itself out as a lender with wholesale lender backing but had no legitimate capital source. It required borrower-customers to provide funds through either (1) a 10% deposit or (2) a bridge/ICA structure involving prepaid interest. Regardless of structure, all funds were controlled by the Debtor and not segregated. The Debtor deployed these funds into speculative uses resulting in loss.

5. The Debtor immediately breached contracts at inception by commingling and misusing funds unrelated to loan funding.

6. Through this Complaint, Plaintiffs request that the Court render a declaratory judgment that the Debtor operated a Ponzi Scheme by and through its principals and its insider/affiliated companies, which declaration shall apply to all legal proceedings relating to the Debtor and the operation of the Ponzi Scheme.

## II. Jurisdiction And Venue

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1409.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III. Parties

9. Plaintiffs are creditors of the Debtor.

10. Defendant is the Debtor in this case, having filed a Chapter 11 Reorganization case on February 21, 2024, which was converted to a case under Chapter 7 on August 12, 2024

## IV. Factual Allegations: The Ponzi Scheme

11. Defendant solicited customers to enter into its lending program.

12. Defendant represented funds would be used for legitimate loan funding.

13. In reality, Defendant operated a Ponzi Scheme. The Debtor diverted borrower-customer funds into Debtor-controlled insider companies along with unrelated expenditures and speculative uses. These actions were accompanied by material misrepresentations and omissions to borrower-customers regarding the movement, use, and true source of funds and capital sourcing.

14. Payments were funded from later borrower-customers.

15. Bankruptcy filed February 21, 2024.

16.    A group of small business owners reported the scheme to the United States Trustee.

17.    The Debtor operated with several soliciting brokers, including McMann Commercial Lending, LLC, Soteria Group, LLC and Second Chance Assets, LLC and paid commissions to brokers from borrower-customer funds.

18.    Customers pursued legitimate business purposes.

19.    Borrower-customers were required to provide funds via deposit or ICA structure.

20.    The Debtor failed to fund loans and pooled funds for unrelated uses.

21.    Losses were direct financial losses.  The losses incurred were direct, contractual losses arising from the Debtor's failure to perform under executed loan agreements, and not speculative or opportunity-based damages.

22.    Funds were directed into insider channels. The Debtor is a Ponzi Scheme.  These transfers and diversions, made without corresponding value or performance to the Debtor or its borrower-customers, further demonstrate unjust enrichment of insiders and affiliated entities at the expense of the Debtor's creditors.

### V.  Legal Standard for the Establishment of a Ponzi Scheme

23.    The issue of defining a Ponzi Scheme has long been visited and revisited by the various Circuits of the Federal System, including the 11th Circuit.  At present, the standard adopted by the 11th Circuit through its interpretation of leading cases has resulted in at least three (3) separate objective tests to determine the existence of a Ponzi Scheme. As set forth herein, the relevant evidence supports the proposition that the Debtor meets the criteria of all three (3) tests to determine the existence of a Ponzi Scheme.

24. The Circuit's current definition of a Ponzi scheme stems from the 9th Circuit and recognizes two essential elements: (1) the funneling of money from new Customers to pay old Customers, and (2) no legitimate profit-making business opportunity exists for Customers. See Winkler v. McCloskey, 83 F.4th at 723 (9th Cir. 2023). Both are objective factors. ("the First Test").

25. Moreover, some courts use a four-factor test that considers whether: (1) deposits were made by Customers; (2) the debtor conducted little or no legitimate business operations as represented to Customers; (3) the purported business operation of the debtor produced little or no profits or earnings; and (4) the source of payments to Customers was from cash infused by new Customers. ("the Second Test").

26. Still other courts have identified badges that weigh in favor of finding a Ponzi Scheme, including (1) the absence of any legitimate business connected to the investment program; (2) the unrealistic promises of low risk; (3) commingling investor/borrower money; (4) the use of agents and multiple brokers paid high commissions to perpetuate the scheme; (5) misuse of investor/borrower funds; (6) the payment of excessively large fees to the perpetrator; and (7) the use of false financial statements. ("The Third Test").

27. As will be conclusively demonstrated through the evidence which has developed in the instant case, this Debtor's operation of its business operations meets all required elements of the First Test, the Second Test, and the Third Test for the establishment of a Ponzi Scheme.

**Count I**
**Claim For Relief: Declaratory Judgment**
*(Declaratory Judgment Act, 28 U.S.C. § 2201)*

28. Plaintiffs incorporate and reallege paragraphs 1-27 herein.

29. An actual controversy exists between the parties regarding whether the Debtor

operated as a Ponzi scheme.  A declaratory judgment is necessary to establish that all transfers made by the Debtor to Customers were made with the intent to hinder, delay, or defraud creditors.

30.     The Debtor operated its business in a manner in which: (1) the funneling of money from new Customers was intended to and in fact did pay old Customers, and (2) no legitimate profit-making business opportunity existed for Customers.

**WHEREFORE**, Plaintiffs hereby demand the entry of a Declaratory Judgment which adjudicates that Debtor, GENIE INVESTMENTS NV INC., meets all legal requirements to be identified as a Ponzi Scheme, for all purposes, in any and all legal proceedings before this Court and all other Federal and State Courts.

### Count II
### Claim For Relief: Declaratory Judgment
*(Declaratory Judgment Act, 28 U.S.C. § 2201)*

31.     Plaintiffs incorporate and reallege paragraphs 1- 27 herein.

32.     The Debtor operated its business in a manner in which: (1) deposits were made by Customers; (2) the debtor conducted little or no legitimate business operations as represented to Customers; (3) the purported business operation of the debtor produced little or no profits or earnings; and (4) the source of payments to Customers was from cash infused by new Customers.

**WHEREFORE**, Plaintiffs hereby demand the entry of a Declaratory Judgment which adjudicates that Debtor, GENIE INVESTMENTS NV INC., meets all legal requirements to be identified as a Ponzi Scheme, for all purposes, in any and all legal proceedings before this Court and all other Federal and State Courts.

**Count III**
**Claim For Relief: Declaratory Judgment**
*(Declaratory Judgment Act, 28 U.S.C. § 2201)*

33.    Plaintiffs incorporate and reallege paragraphs 1- 27 herein.

34.    The Debtor operated its business in a manner in which: (1) there was the absence of any legitimate business connected to the investment program; (2) there existed the unrealistic promises of low risk; (3) there was extensive commingling of investor money; (4) there was extensive use of agents and multiple brokers paid high commissions to perpetuate the scheme; (5) there was extensive misuse of investor funds; (6) there were excessively large fees to the perpetrator; and (7) the use of false financial statements by the Debtor.  Because the entity was a Ponzi scheme, all payments of "profits" to Customers are presumed to be fraudulent transfers under applicable bankruptcy/state law.

**WHEREFORE**, Plaintiffs hereby demand the entry of a Declaratory Judgment which adjudicates that Debtor, GENIE INVESTMENTS NV INC., meets all legal requirements to be identified as a Ponzi Scheme, for all purposes, in any and all legal proceedings before this Court and all other Federal and State Courts.

7

## VI. **Prayer For Relief**

WHEREFORE, Plaintiffs demand judgment against the Defendants as requested herein,

and for such other relief as the Court deems just.

> */s/ Scott W. Spradley*
> SCOTT W. SPRADLEY
> Florida Bar No. 782467
> Law Offices of Scott W. Spradley, P.A.
> 301 S. Central Avenue
> P.O. Box 1
> Flagler Beach, FL 32136
> Tel: 386/693-4935
> Fax: 386/693-4937
> scott@flaglerbeachlaw.com
> Attorneys for Creditors Charles Blake Stringer
> and Nutra-Acres LLC